UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

LUIS CONTRERAS ORELLANA,                                              Petitioner,

v.                                                          Civil Action No. 4:25-cv-112-RGJ

KRISTI NOEM, et al.                                                 Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Luis Contreras Orellana's (also known as Penelope Contreras Orellana) Writ of Habeas Corpus. [DE 1]. Respondents responded on October 3, 2025. [DE 10]. Petitioner replied on October 7, 2025. [DE 11]. The Court held a Show Cause Hearing on September 30, 2025. [DE 5]. After the hearing, the Court ordered further briefing pursuant to the United States' request. [DE 14]. Both parties complied. [DE 15, DE 16]. This matter is ripe for adjudication. For the reasons below, the Court will **GRANT** Orellana's Petition for a Writ of Habeas Corpus.

### I.  Background

Petitioner Luis Contreras Orellana, also known as Penelope Contreras Orellana, ("Orellana") is a native and citizen of El Salvador. [DE 1 at 2]. She has been present in the United States for approximately 12 years, having arrived in 2013. [*Id.*]. She was forced to flee El Salvador due to threats and discrimination. [*Id.*]. And since arriving in the United States, she has been a victim of sex traffic and is living with HIV. [*Id.*].

Although Orellana originally entered the United States without inspection or admission, after charges, unrelated to this matter, Orellana ended up at Daviess County Jail. [DE 10 at 59-60]. There, the United States released her on her own recognizance and placed her in standard removal proceedings, 8 U.S.C. § 1229a ("Section 1229a"). [DE 1 at 2]. But on May 18, 2022, an Immigration Judge dismissed those proceedings. [*Id.*]. Again, in March 2024, Respondents

detained Orellana and placed her again in Section 1229a. From this detention, Orellana was released on bond pursuant to 8 U.S.C. § 1226 ("Section 1226") [DE 16 at 99]. Since the bond hearing, Orellana has cooperated with all the terms and conditions of her bond, including attending all Immigration and Customs Enforcement ("ICE") hearings and requirements. [DE 1 at 6]. However, when Respondents detained Orellana *this time*, on August 26, 2025, they detained her pursuant to 8 U.S.C. § 1225 ("Section 1225") [DE 16 at 99]. Orellana asserts that the United States illegally detained her under Section 1225 instead of Section 1226. [DE 1 at 6-7]. The United States in turn alleges Orellana is *properly* detained under Section 1225 as an "applicant for admission" under Section 1225. [DE 10 at 60].

Orellana asserts that the United States' actions violated the Administrative Procedures Act, the Due Process Clause of the Fifth Amendment, and the Immigration and Nationality Act. [DE 1 at 14-17]. Orellana seeks release from her detention, or in the alternative, to hold a bond hearing to determine whether she should remain in custody. [*Id.* at 17].

## II.    Exhaustion of Remedies

Petitioner states that prudential exhaustion does not apply to her detainment. [DE 1 at 5-6]. The United States does not respond, nor does it contest, that exhaustion is not required. Still, the Court will examine exhaustion for thoroughness.

When neither a statute nor rule mandates exhaustion, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). This is also known as "prudential exhaustion." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

Here, no applicable statute or rule mandates exhaustion. As a result, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson* 725 F.3d at 593. The Sixth Circuit has not adopted any formal test, but instead, many trial courts within the Sixth Circuit

borrow the Ninth Circuit test from *United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). In the alternative, a court can also choose to waive exhaustion, when the "legal question is fit for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

> Courts may require prudential exhaustion when:
>
> > (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
> > (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
> > (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). As other courts within the Sixth Circuit have used the above test, so will this Court. *See id; Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *3 (E.D. Mich. Sep. 9, 2025); *Villalta v. Greene*, 2025 WL 2472886, at *2 (N.D. Ohio Aug. 5, 2025). Using those factors, the Court finds that all factors favor weigh *against* requiring exhaustion.

First, the central question at issue in this matter is which detention provision, Section 1225 or Section 1226, applies to Orellana. This is a purely legal question of statutory interpretation, which this Court, and other courts within this circuit, have already addressed. *See Pizarro Reyes*, 2025 WL 2609425, at *3. Alternatively, even if an agency interprets the relevant statutes, this Court is not bound, or deferential to any agency interpretation of a statute. *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) ("courts need not and under the APA *may not* defer to an agency interpretation of the law simply because a statute is ambiguous") (emphasis added). Therefore, the Court does not need any agency expertise to help in their consideration of this purely legal decision. *Id.*

Second, because of the alleged Constitutional violation, an appeal to an administrative review board, here the BIA, is not necessary. The Sixth Circuit has held that due process challenges

3

generally do not require exhaustion because the BIA cannot review constitutional challenges. *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006); *Lopez-Campos,* 2025 WL 2496379, at *4 (holding that because Lopez-Campos' habeas petition includes a due process claim, the appeal and process through an administrative scheme "is likely futile").

And lastly, the United States has made clear, their position on Section 1225 as it applies to Orellana. The United States has taken this position in similar cases before this Court, and across the country. *See e.g., Pizarro Reyes*, 2025 WL 2609425, at *4; *Patel v. Tindall*, 2025 WL 2823607, at *2-4 (W.D. Ky. Oct. 3, 2025); *Simpiao v. Hyde*, 2025 WL 2607924, at *7 (D. Mass. Sep. 9, 2025). Therefore, it is unlikely that any administrative review would lead to the United States changing its position and precluding judicial review. *Sterkaj*, 439 F.3d at 279. As a result, based on the above factors, this Court finds that prudential exhaustion is not required.

Furthermore, situations similar to the present, courts can also waive exhaustion. *Lopez-Campos*, 2025 WL 2496379, at *5 ("[b]ecause exhaustion would be futile and unable to provide Lopez-Campos with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition."); *Pizarro Reyes* 2025 WL 2609425, at *4 ("if the Court requires administrative exhaustion, Pizarro Reyes faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his removal. As a result, the Court will waive administrative exhaustion."); *Simpiao,* 2025 WL 2607924, at *6-7 (holding that because "the policy concerns animating the common-law exhaustion" are absent, "waiver of exhaustion is warranted").

And as the Court in *Lopez-Campos* noted, bond appeals before the BIA on average take six months to complete. *Lopez-Campos*, 2025 WL 2496379, at *5 (citing to *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)). Prolonging Orellana's detainment would mean

unnecessary hardship, especially when the Court is able to resolve the purely legal question now. *Id.*

Therefore, this Court will follow their fellow trial courts and waive the exhaustion requirement for Orellana and reach the merits of her Petition.

### III.   Discussion

#### A.  Section 1225 vs. Section 1226

The United States makes an argument regarding the statutory interpretation of Section 1225's applicability versus Section 1226 nearly identical to that made in *Beltran Barrera v. Tindall*, 2025 WL 2690565, at *5 (W.D. Ky. Sep. 19, 2025) and therefore the Court fully incorporates by reference its reasoning and decision in that action. There, the Court held that based upon the statutory context, scheme, and text of Section 1225, it was difficult to "find that an individual is 'seeking admission' when that noncitizen never attempted to do so." *Id.* at 9. This is in contrast to the BIA's holding in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025). *Id.*

At the time of the decision in *Barrera*, and this Courts' subsequent decision in *Singh v. Lewis*, 2025 WL 2699219, no district court who has reviewed this identical issue found for the United States' novel interpretation of Section 1225. Since then, a small minority of courts have come to that conclusion. Specifically, the United States points to *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sep. 24, 2025) and *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sep. 30, 2025). *Chavez* held that Jose Chavez, who was initially granted bond by an IJ and never sought admission into the United States, was properly detained under Section 1225, not Section 1226, as an "applicant for admission" within the statutory confines of Section 1225. 2025 WL 2730228, at *4. Therefore, Chavez was properly detained without a re-determination hearing. *Id.* at *5. Similarly, *Vargas Lopez*, deemed that Mr. Vargas Lopez, who had been in the United States since 2013, was an "applicant for admission" as is "consistent with the conclusion of the BIA in

5

*Hurtado.*" 2025 WL 2780351, at *9. The *Vargas Lopez* court also asserted that "*Vargas Lopez may be detained under 1225(b)(2) even if he is also subject to 1226(a).*" *Id*. (emphasis in original). Thus, Mr. Vargas Lopez's request for a bond hearing was denied. *Id.* at 10.

This Court is not obligated to follow those rulings because they are contrary to cases within the Sixth Circuit and the overwhelming majority of cases across the country. Moreover, *Chavez* creates an internal split within the District of Nebraska. *See Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *see also, Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. Aug. 19, 2025). And although not within the same district court, there is now a split within California district courts as well. *See Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025) (holding that Section 1226, not Section 1225 applies to Petitioner). The Court finds it noteworthy, too, that neither *Chavez* nor *Vargas Lopez* interact with the majority case law that exists either within their district, circuit, or the country. Both decisions appear to take a review on the matter as one of first impression. That is, neither decision makes any reference to the existing body of case law that exists within their district or the United States at large. And specifically, neither decision makes any reference to any of this Courts' previous decisions.

Furthermore, even after a thorough review of those decisions by the Court, the Court finds the analysis in *Beltran Barrera* correct. Although both *Chavez* & *Vargas Lopez* also conducted their own analysis, the Court believes they did not analyze the entirety of the statutes. This Court reviewed "each and every word" of the statutes, including "the title." *Barrea*, 2025 WL 2690565, at *4. The Supreme Court has told lower courts that when a statute is ambiguous, a "title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (Alito, J., concurring in judgment). Thus, this Court held that the title of Section 1225, "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" with the addition of "arrival" in comparison to

6

Section 1226, reinforces the specific and narrow nature of Section 1225. *Barrea,* 2025 WL 2690565, at *4. The addition of "arrival" reinforces the narrowness, as the statute focuses on noncitizens who arrive via "crewman" or as "stowaways." *Id.* Further, neither opinion thoroughly analyzed the context of where Section 1225 sits within the immigration scheme, as *Barrera* does. *Id.* (holding that the including of the catchall provision of Section 1226, after a narrower Section 1225, is "likely no coincidence") (quoting *Pizarro Reyes,* 2025 WL 2609425, at *5).

And lastly, contrary to both *Chavez & Vargas Lopez*, this Court expressly disagreed with the holding in *Matter of Yajure Hurtado.* 29 I&N Dec. 216 (2025). *Chavez* does not appear to interact with *Hurtado* at all, outside of recognizing that it is "precedential." *Chavez*, 2025 WL 2730228, at *3. *Vargas Lopez* correctly notes that *Hurtado* is not binding on them, but agrees with the analysis. 2025 WL 2780351, at *9. On the contrary, this Court expressly stated that the BIA does not control over federal district courts, and that this Court believes the decision in *Hurtado* was incorrect. *Beltran*, 2025 WL 2690565, at *5.

In *Beltran*, this Court held for three reasons the BIA decision should not prevail. First, "the Court should not defer to an agency interpretation of law just because of an ambiguous statute." *Id.* Second, the "Court finds it difficult to find that an individual is 'seeking admission' when that noncitizen never attempted to do so." *Id.* And third, the BIA held that Section 1225 does not render parts of the Laken Riley Act superfluous. *Id.* The majority other courts have also disagreed with *Hurtado*. *See, e.g., Jhon Peter Hyppolite v. Noem*, 2025 2829511, at *12 (E.D. N.Y. Oct. 6, 2025) (rejecting the United States interpretation of Section 1225 based on *Hurtado*); *see also Puga v. Krome*, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025) (same). This analysis is *still* in line with the *overwhelming* majority of case law within this circuit and country. *See, e.g., Lopez-Campos*, 2025 WL 2496379; *Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E.D. Mich. Sep. 9, 2025).

7

On a similar note, time is of the essence in Habeas petitions. While Petitioner stated that they were "ready to submit on the briefs that exist," the United States requested further briefing. Tr. of O.S.C. H'rg at 3-4, *Orellana v. Noem*, 4:25-cv-112 (Oct. 9, 2025).  Specific reasons include another case holding[1] in the contrary and that "cases have continued to come down." *Id.* And this also included addressing arguments such as "principles of statutory construction in the Laken Riley Act" because the United States was not "put on notice to address" those arguments at the time.[2] *Id.*

However, the Court finds it troubling that the United States did not purport to explain in more detail why the minority decisions, *Chavez* & *Vargas Lopez*, should control over the majority of case law within this circuit and country. Instead, the United States rehashed their old arguments, which are nearly identical to their original brief, and asked that this Court accept them.

Since the Courts' decision in *Beltran Barrera*, trial courts across the country have cited approvingly to *Beltran Barrera* and have used it as a basis for their own rulings. This includes within the Sixth Circuit, but also in other jurisdictions. *See Contreras-Cervantes, et al., v. Raycraft*, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025); *Chavez v. Director of Detroit Field Office*, 2025 WL 2959617 (N.D. Ohio Oct. 20, 2025); *see also*, *Echevaria v. Bondi*, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Ochoa v. Noem*, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025). No court in this country has expressly disagreed with *Beltran Barrera*, or any of this Courts' other related cases. The United States has not presented any reason, outside of rejected and rehashed old arguments,

---

[1] The Court is unable to locate the case the United States describes. The transcript from oral arguments states the case is "Pinion versus High. It's out of the district of Massachusetts." The Court is unable to locate this case. The closest the Court could locate, within the relevant time frame is *Pineda-Chavez v. Hyde, et al.*, No. 1:25-cv-12932 slip op. (D. Mass. Oct. 16, 2025). However, that case *also* ruled against the United States and their novel interpretation of Section 1225. Additionally, the latest District of Massachusetts decision also ruled against the United States. *See Maza v. Hyde*, 2025 WL 2951922 (D. Mass. Oct. 20, 2025).

[2] The United States did address the Laken Riley Act in their Response to Order to Show Cause, so the Court is mildly confused as to this answer, as the United States was clearly on notice and addressed the argument. [DE 10 at 65].

8

to change the belief of this Court and the other courts across the country who have cited to this Courts' previous decisions.

Therefore, Orellana, who has been present in the United States for more than 12 years is not "seeking admission" into the United States. Thus, Section 1226, not Section 1225, should apply to her detention.

### B. Lawfulness of Current Detention

As stated, Orellana is detained under Section 1226. Thus, the Court must determine whether the continued detention is in violation of her Due Process.

The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. The United States does address the Due Process claim, but instead focuses solely on the legal argument of Section 1225 versus Section 1226 as referenced above.

*i.* Private Interest

It is undisputed Orellana has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's

9

condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). This is to determine if the conditions are indistinguishable from criminal incarceration. *Id.* Orellana is being held at Grayson Counter Detention Center. [DE 1 at 2]. Prior to the most recent detention, Orellana was in a program focusing on her mental health and sobriety, including recovering from her trauma as a victim of sex trafficking. [*Id.* at 7].

Additionally, when ICE has initial discretion to detain or release a noncitizen pending removal proceedings, after the initial release, "the petitioner has a protected liberty interest in remaining out of custody." *Hernandez Nieves v. Kaiser*, 2025 WL 2533110, at *4 (N.D. Cal. Sep. 3, 2025). Due process then "requires a hearing before an immigration judge before re-detention." *Id.* As a result, the first *Matthews* factor favors Orellana's position.

      *ii.*    Risk of Error

The second factor concerns the risk of the erroneous deprivation of Orellana's liberty interest. Prior to this most recent detention, Orellana *was* on an approved bond. [DE 1 at 6]. A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that "re-detention without any individualized assessment" establishes a "high risk of erroneous deprivation" of a protected liberty interest). As of today, Orellana has not had a renewed merits bond hearing, with counsel and evidence. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Respondents have not demonstrated that Petitioner is a flight risk or a danger to the community. And just last year, an IJ found that Orellana was *not* a flight risk when they released her on bond. [DE 1-4 at 32]. Orellana has "never missed a[sic] immigration court hearing and has cooperated with all conditions of her release on bond." [DE 1 at 7]. The United States has not put forth any new facts or evidence to demonstrate Orellana's non-compliance, or any other change in

circumstances. It would appear to the Court the only change within the past year, with respect to Orellana, is the United States' novel interpretation of Section 1225 and Section 1226. Thus, because of a high, if not already evident, risk of erroneous deprivation of Orellana's liberty interest, the second *Matthews* factor favors Orellana.

### iii.  United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao*, 2025 WL 2607924, at *12. But there is a fatal flaw with that reasoning. An independent, neutral arbitrator determined that the specific noncitizen at issue in this matter, Orellana, does *not* pose that type of risk. [DE 1-4 at 32]. Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). Because of that, the Court finds that the third *Matthews* factor also favors Orellana.

\* \* \*

Therefore, the Court finds that all three Matthews factors are in favor of Orellana. The current detention of Orellana without a change in circumstances or renewed bond hearing is in violation of the Due Process Clause and the INA.

As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel*, 2025 WL 2823607, at *6; *Beltran Barrera*, 2025 WL 2690565, at *7; *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure release from unlawful detention."

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in original). The Court will not depart from this norm. As a result, pursuant to Section 1229a & Section 1226, Petitioner must be released and provided with a bond hearing on the merits before a neutral Immigration Judge. *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

## IV.  Conclusion

For the reasons stated above, the United States has violated Orellana's due process rights. The Court **GRANTS** Orellana's Petition for Writ of Habeas Corpus [DE 1]. The United States is directed to release Petitioner Orellana from custody and provide her with a bond hearing before a neutral Immigration Judge; and further, to certify compliance with the Court's order by a filing on the docket no later than **October 29, 2025.**

Rebecca Grady Jennings, District Judge
United States District Court

October 27, 2025